Good morning and welcome to the Fourth Circuit. Judge Floyd and I are very pleased to have Judge Max Cogburn sitting with us from the Western District of North Carolina. We'll be proceeding in the first case of U.S. v. Jordan Laudermilt. Mr. Herndon? Please report. My name is Stephen Herndon. I represent Jordan Laudermilt in the appeal of his conviction of being a felon in possession of a firearm. I've raised three issues, and I'm going to try and be brief for once in my life. One of the issues seems to be mildly irrelevant, and that is whether or not the one point for a conviction in Meigs County Court counts against Mr. Laudermilt's criminal history. It appears to be irrelevant because his criminal history category is going to be six, whether or not the court affirms or disaffirms the trial court's conclusion that that should be counted. Howsoever, that extra point was sufficient to result in Mr. Laudermilt being rated as eligible for USP Terre Haute for placement instead of for an FCI. The point that I tried to make in front of Judge Stamp was that even though his criminal history category was six, the BOP relies upon pre-sentence reports and making determinations about placement. That was the case with respect to Mr. Laudermilt's one point. The argument I made was that the form that he signed waiving his right to counsel was ineffective. He signed a waiver of his right to have counsel present during questioning by law enforcement, not a general waiver of counsel. He signed that on two separate occasions. Moreover, in state court in Ohio, the state courts in Ohio have held convictions to be void where there's not a colloquy conducted on the record and annotated on the record, and that's the case in Mr. Laudermilt's situation. They've also held a conviction to be void under Rule 22 of the Rules of Trial Courts in Ohio where the waiver of a right to counsel in the entry of the plea is not presented on the record or annotated on the record, and that's the case in Mr. Laudermilt's case. The second issue I've raised is a plain error issue. It's a series of testimony by, I believe, five police officers that they were responding to an incident where a man had a gun, and I think that's more important in this case than in other cases. And again, it's a plain error. It was not objected to in the trial. I think it's more important in this case because of the strength or lack of strength of the state's case. The complaining witness was Sherry Lee Curry, and she testified that the firearm that the government presented as being the firearm looked like it, but she couldn't say for sure it was it. Her father, who was there, said it wasn't it, and her brother, John Curry Jr., who was there, said he didn't even see a firearm. None of the police officers saw a firearm. The father testified that it was a shotgun. The gun that was seized was a Ruger 10-22, nothing like a shotgun. Ms. Curry was high on cocaine and alcohol when she testified and high on cocaine and alcohol on the night of the event. So I think adding a police officer's testimony to their very weak testimony is more significant than it would normally have been, and I would suggest that the addition of that testimony is only mildly relevant, if at all. I think it's important to note that it was extremely cumulative. It was much more prejudicial than probative, and that it does, in fact, constitute plain error. And had it not come in, the result might have been different because of the strength or lack of strength, as I've said before, of the government's evidence. The last issue is whether or not a four-level enhancement for having committed the offense of being a felon in possession during the commission of a state felony was appropriate. My argument was that the facts of this particular case do not fit the state felony that was charged, which is wanton endangerment. On page 404 of the transcript, Judge Stamp, I think, made the same error that the government urges this court to make, and he made the decision that it constituted wanton endangerment because of the perception of threat by the individuals who were present, whether it was law enforcement officers or the Curries. Perception of threat is not one of the elements of wanton endangerment. Wanton endangerment requires the performance of an act wantonly that has a significant risk of putting another in danger of receiving significant bodily injury or death. Okay. The first mistake, I think, is in deciding whether or not it's wanton endangerment based upon the elements of some other offense, which I suggest is brandishing, rather than upon the elements of wanton endangerment. If you look at wanton endangerment in this particular case, you'll find that the gun was found racked in the kitchen, that Ms. Curry said the gun was pointed at her, her father said it was waved around, John Curry said he didn't see it, none of the law enforcement saw it. When the gun was found, it was unloaded. Not only was it unloaded, but there were no cartridges found anywhere near the gun, in the house, or in the vicinity. I would suggest to the court that you don't perform an act that puts another in significant risk, and it's another in significant risk of receiving serious bodily injury or death with an unloaded firearm. Okay. Well, the government makes the argument, however, does it not, that you're talking about a very unstable, volatile situation, and when somebody's there with a gun, and under those circumstances, that it can precipitate a response. How would you respond on that? Well, first, I think you have to parse the elements, and the parsing of the elements is that the person has to perform an act with a firearm that puts another in danger. It's not perform an act with a firearm that encourages law enforcement to put himself in danger, but another in danger, someone other than himself. What about other occupants of the house? Wasn't there a young boy in the house? He was arrested at gunpoint, but that was not an act performed by Mr. Laudermill, which is what I think the statute requires. If you abide the government's argument, shoplifting or any offense that's committed by a person puts another person in danger. In fact, you can argue that DUI, which has been rejected as being a violent crime, puts another in danger because when the police come up on a person who's driving estranged, I can tell you if you get out of your car and reach for your wallet, you're about to get shot had that happened. Any offense that you commit raises a danger that law enforcement will react or overreact in a manner that may cause danger to you, and if they're bad shots, as opposed to bystanders. But the statute is not aimed at that particular type of conduct. It's aimed at putting another person in danger by a specific act with a specific firearm. Okay. Let me ask you just one other question, then, if I could, Mr. Herndon. You said the witness was fairly unspecific about the issue of the gun. That Ms. Shanalee Curry, didn't she, referring you to 205 in the appendix, he threatened to put a few rounds in me and threaten me with a gun. She did. I remember him having the gun. He pointed the gun at me. Do you know what kind of gun it was? Can you describe the gun as to color? I remember it being long, like a shotgun, and it being brown. I saw that gun in the house before. So she's pretty clear this was a gun, isn't she? Well, if you continue, she's going to say I can't say that that is the gun when she's talking about the gun. Right, because she was pretty clear that it was a gun. She was very clear that there was a gun. Okay. Absolutely. She was also very clear that the gun was pointed at her. Her father was less clear. He said that is not the gun, and he said it was waved around. Her brother was even less clear. I didn't see a gun, but I was threatened, and I was threatened with body bags. Well, doesn't that just go to the weight of the evidence? The jury's entitled to believe who they want to believe. Excuse me, Your Honor? Doesn't all that go to the weight of the evidence? Absolutely. And the jury's entitled to believe who they want. Absolutely. And I'm not suggesting that sufficiency of the evidence is an issue that's before the court. What I am suggesting is that in terms of the weight of the evidence, the addition of the testimony of the five police officers, that first, we're going there because there's a guy with a gun there adds to that weight, which is, I think, slim. And secondly, when you add in, not only am I going there because there's a gun, I'm thinking about calling out the SWAT team because there's a gun. Adds to the weight, the slim weight, of the evidence of Ms. Curry and Mr. Curry and Mr. Curry. I don't think it's a sufficiency of the evidence question at all. I'm done, if y'all are done with me. Okay. Thank you very much, Mr. Harden. Mr. Bernard? If I've pronounced that correctly? Mr. Bernard, yes. Okay, good. Please, the court, I'm Randy Bernard. I've been involved with the case since the complaint was filed back in March of 2011. As this court is aware, it came up on a motion to suppress that was granted, was reversed, and then I tried the case. With respect to the first assignment of error, Mr. Herndon concluded that there was clear error. But as this court is aware, the standard that's applied, there was no objection at trial to the background testimony of the officers. There was no objection either on hearsay grounds or Rule 403 grounds. So the standard that's applied is the plain error standard. And obviously the three factors in that standard are that there be an error, that that error be plain, and that it affect the substantial rights of the defendant and otherwise affect the outcome of the proceedings. As I indicated in my brief, the United States position is there was no error whatsoever. The testimony of the officers concerning the background of the dispatch call and what they did in order to get to the premises and prepare for whatever they were going to do was simply that, background testimony. The United States is cited to the Love case, which recognized that those statements, such statements are not offered for the truth of the matter asserted. Also referenced the Bullock opinion. I would note for the record that the discussion by the government actually related to Judge Russell's dissenting opinion, where he again recognized the, where the justice recognized that background testimony and the fact that such testimony is not hearsay. So first of all, there's no error. In fact, if you look at the transcript, counsel in the brief makes much ado about that testimony, claiming that it was somehow turned the tide of the trial or caused some effect on the trial. Testimony for each officer, and each officer was important and necessary because each did a different thing at the scene. Some controlled the Curry's, some arrested the defendant. The others went in to protect the sweep of the home. So all six officers. All of them didn't have to say what they were responding to initially, did they? I mean, it is sort of system overload. Isn't your argument really that they can't meet the plain error standard? I believe they can't meet the plain error standard, but again, is it overloaded at the time? It didn't seem overloaded. You call a witness to the stand, and again, if you're in the trial, it's much more apparent that you call a witness to the stand. What did you do? How did you get there? Or why were you there? I think for each witness, it was simple background. Is it system overload? I don't think so because once you look at their testimony, we're talking about one or two answers. And if you look at the actual testimony of the officers, most of them said, I received a dispatch call of a domestic involving a weapon. It wasn't as specific as a defendant makes it. Now, the officer also said, I understood that Jordan Laudermill and Sean Lee Curry were involved. But again, I don't think it's system overload, and I certainly don't think it has the prejudicial or had the prejudicial effect that the defendant has given it. However, alternatively, assuming that it was not necessary, the question is, and that's where we get to the plain error analysis. First of all, was it plain if there was error? If it was here, say, was the airplane? Again, during the trial, simply was background testimony, no objection, and did not appear that it was prejudicial whatsoever during trial. And even after trial, looking at the entire record, it doesn't appear to be prejudicial, and certainly does not have or did not have the same effect that appellant's counsel gives it. More importantly, however, the key question is, did it affect the outcome of the proceedings? Did it affect the substantial rights of the defendant? And I submit it did not, as the court has already recognized. Sean Lee Curry, who was the declarer on the 911 call, she's the one that called the 911 and said, hey, Jordan Laudermill has a gun. He's pointing it at me. He said he's going to put some rounds in me. And we played the 911 call. That was in Miss Wander Davis. Sean Lee Curry testified, and she was specific. The firearm was pointed at her. Threats were made, and she was never backed off. There was substantial and extensive cross-examination of her. Even her father, Mr. Curry, indicated that there was a firearm present. Now, at trial, it's true. He wasn't sure and said, in fact, that wasn't the weapon that was there. However, you couple their testimony, the specific 911 call and the specific testimony of Miss Curry with the fact that when there was a search of the premises, only one firearm was located, and that was a Ruger .22. And then you add into that the fact that during the jail calls to the defendant, when his sister asked him, why did you have a gun, his response was, I didn't have a gun. It was not, I didn't have a gun. His response was, well, because I thought, and there was an expletive relating to Miss Curry, I thought she'd pay me my money, and it wasn't loaded. There were no bullets in it anyway. So you couple all that evidence and the fact that there was no objection, you couple all that with a background testimony of the officers, and it's quite clear that the evidence was overwhelming, was specific. And despite the cross-examination of the witnesses, there was much more corroborating evidence than Appellant has indicated. So I do believe the answer to the question is, maybe a long way to get there, is that even if it was not necessary in its entirety, the defendant still can't meet that third prong of the plain error challenge. And, of course, this Court, in order to, even if those prongs were met, this Court would still have to look at whether it had seriously affected or undermined the fairness, the reputation of the judicial proceedings, and it did not. It simply did not. And that is why the defendant's arguments with respect to assignment of error number one should not be well taken. What about the point for the uncounseled misdemeanor plea? Looking at the uncounseled, I do believe there was a question. I still believe there's a question as to whether there was an adequate waiver of counsel. There were certainly two forms that were filled out on May 2nd and May 7th before the defendant actually entered his pleas on May 7th. I think under the Shelton case, Alabama v. Shelton, the uncounseled misdemeanor, the two misdemeanor pleas in this case, would fall under that they should have been counseled. The question is, did the defendant waive his right to counsel through those waivers? There's nothing about right of counsel at trial. It talks about right of counsel during making the statements, and that sort of thing. There's nothing in there about waiving counsel for trial. And that's what I was getting at. Mr. Herndon had argued below that there was a waiver of the Fifth Amendment versus the Sixth Amendment, right? And I think there's some facial appeal to that. The record is unclear whether there actually was a waiver of the Sixth Amendment right to counsel. So I think we can assume. Did the government take the position? Did the government help the district court at that time by saying, maybe you don't want to include those points? Judge, before we send it up, did you all help him out a little bit there? I don't think I helped him out in the sense that, basically, I don't think the standard has been met. The court moved into it and said, I do believe those points count, or that I do believe that the probation officer should be sustained. And looking back on it now as I look at the record, look at the entire transcript, I do believe there's an argument that those uncounseled, that one criminal history point should not have been counted. The question is whether the inclusion of that created any prejudice or harm. The defendant's record, he's got the gun conviction in this case, he's got a prior drug, prior domestic assault, he's a criminal history six, whether we include that one criminal history point or not. I believe, Mr. Herndon, that the trial court said it might affect some BOP classification, possibly. But here, I think, in the brief, it says it probably will have an effect. And as I heard counsel today, he indicated that he believed there actually was an effect. However, I think that's all speculation. I don't think the defendant has proven any prejudice that's resulted in effect. I don't think there is any prejudice, particularly the fact that he's a criminal history six, no matter what, he's got those prior convictions, including this gun conviction, all of which are not being attacked. He's just simply attacking the driving while suspended and the driving while under the influence of a controlled substance. So I don't believe that there's any proof or evidence. In fact, I doubt, sincerely, that that would affect his BOP classification much more so than any of the other convictions and his criminal history category. And the burden to show prejudice in this case would be on the defendant, wouldn't it? Yes, Your Honor. And I don't think the defendant has shown that. I think the defendant has shown that it probably should not have been counted, that it should be 15 as opposed to 16 points. However, that does not affect anything. And the defendant hasn't proven that it's affected anything. With respect to the second assignment, the assignment of additional four levels for the want and endangerment, I do believe, as Justice Keenan noted, in this case a firearm was possessed. That's what the conviction resulted in. That's what the witnesses said. Admittedly, it was not loaded. I don't think there's any proof that it was loaded or that there were any cartridges located near the weapon. But I don't think the Halbert case stands for the proposition that a firearm does not have to be discharged pursuant to want and endangerment. But what I think is important about that case is that it cites to some other state jurisdictions, which stand for the proposition that an unloaded firearm itself can present a reckless endangerment or want and endangerment situation. And here, it is based upon the facts of this case. I don't know the shoplifting example that counsel gave really doesn't address the facts of this case, in which we do have a firearm. We have a 911 call where somebody is upset. It's a volatile situation in which Sean Lee Curry is on the phone saying he's got a gun, he's threatening to shoot me. The officers all respond armed. In fact, they have long weapons out. If you notice in the transcript at one point, they actually stop a car that's leaving the Laudermill residence and take the occupants of that car out of the car by gunpoint because they're not sure if any of the subjects in the domestic are in that car. They go up to the property with their guns pulled. They're hiding in the weeds and themselves worried that this is a situation where there might be a sniper situation. The defendant comes out. They arrest them at gunpoint. The Curries are there at the same time, not necessarily at that point caught in any crossfire situation. Then you have the 15-year-old son, the boot, who's in the house when they're doing the protective sweep with their guns drawn. I can't envision a more volatile or dangerous situation where you have officers forced to respond in this manner because the defendant is the one that chose to grab the gun, point it, and threaten people. Yeah, it may have been unloaded, but that does not mitigate or minimize the dangerousness of the situation due to the circumstances of this case. For that reason, I do believe that assignment error should not be well taken as well. That's all I have. Thank you. Thank you. You're welcome. Even more briefly, the act of wanton endangerment is designed to impact on the action of the person with the firearm, not the action of the persons around the person with a firearm. The only case that West Virginia has addressed with sufficiency of the evidence had a case where there was a 6-1⁄2-pound trigger pull, a loaded firearm pointed at the victim, a threat, consumption of alcohol, finger on a trigger, and the safety obviously off. This doesn't even come close to that. When the government argues that other people may have performed acts that placed other people in danger, it isn't looking at the elements of this particular offense. It's extending those elements beyond what the legislature of West Virginia intended when it passed. This issue should be judged solely upon the elements of the offense, and I would suggest to the court that one of the important issues that hasn't even been addressed is the fact that the trial judge analyzed this not based upon the elements of the offense, but based upon page 404 of the transcripts, the joint appendix in volume one. He says, I think there's enough perception of threat by others for me to find the four-level enhancement. So he's using the wrong standard, even if the government is correct, which the government is not. I think the objection to the four-level enhancement was and is well taken. All right, sir, thank you very much. The court will come down to brief counsel at this time.
judges: Barbara Milano Keenan, Henry F. Floyd, Max O. Cogburn, Jr.